UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------X
DAEWOO LOGISTICS CORP.,                          :
                                                 :
                        Plaintiff,               :
                                                 :
        - against -                              :
                                                 :
HYRAM MARITIME SAL,                              :
                                                 :
                        Defendant.               :
----------------------------------------------------------X

## VERIFIED COMPLAINT

Plaintiff, DAEWOO LOGISTICS CORP. ("DAEWOO" or "Plaintiff"), by and through

its attorneys, Lennon, Murphy & Lennon, LLC, as and for its Verified Complaint against the

Defendant, HYRAM MARITIME SAL ("HYRAM" or "Defendant"), upon information and

belief, as follows:

1.      This is an admiralty and maritime claim within the meaning of Rule 9(h) of the

Federal Rules of Civil Procedure and 28 United States Code § 1333. This claim involves the

breach of a maritime contract of charter. This matter also arises under the Court's federal

question jurisdiction within the meaning of 28 United States § 1331 and the New York

Convention on the Recognition and Enforcement of Foreign Arbitral Awards (9 U.S.C. § 201 *et*

*seq.*) and/or the Federal Arbitration Act (9 U.S.C. § 1 *et seq.*).

2.      At all times material to this action, Plaintiff was, and still is, a foreign corporation,

or other business entity with a place of business at Seoul, Korea.

3.      Upon information and belief, HYRAM was, and still is, a foreign corporation, or

other business entity organized with a place of business at Tyre, Lebanon.

4.    At all material times, Plaintiff was the disponent Owner of the motor vessel "PIONEER SPIRIT" (hereinafter the "Vessel").

5.    By a sub-charter party based on the NYPE charter party form dated April 23, 2004 Plaintiff time chartered the Vessel to HYRAM for a period of four (4) months for the carriage during a first leg of a cargo of bagged rice between Ho Chi Minh City / West Africa and for the carriage during a second leg of a cargo of bagged sugar for between s Brazil / West Africa, always afloat, always within Institute Warranty Limits. *A copy of the sub-charter party contract is attached hereto as Exhibit 1.*

6.    During the course of the charter, disputes arose between the parties regarding claims asserted by cargo receivers for alleged damage to the cargo of bagged rice caused by cargo handling operations during loading and/or discharging.

7.    Under the head charter party, DAEWOO was claimed against by the vessel's head owner, non-party Pioneer Spirit Maritime Limited, for indemnity of alleged cargo claims. DAEWOO settled Owners indemnity claim, after the commencement of arbitration and submission of briefs therein, for $25,000 plus owner's portion (£664) of the arbitration costs. *Copies of correspondence regarding Daewoo's settlement with Pioneer Spirit Maritime Limited and proof of payment of the settlement and arbitrators costs is attached hereto as Exhibit 2.*

8.    Daewoo's exposure to the vessel's head owners was caused due to HYRAM's breach of its obligations under clause 8 of the sub charter party to safely load, stow, tally, dunnage, lash, secure, unlash, undunnage, unsecure, discharge and trim the cargo. In breach of its obligations thereunder, Plaintiff has sustained damages in the principal amount of $25,000 plus £664, exclusive of interest, incurred and expected arbitration costs, and incurred and

2

expected attorneys fees. Daewoo seeks recovery of the sums paid to Pioneer Spirit Maritime under the implied indemnity of clause 8 of the sub charter party.

9.     Pursuant to clause 17 of the sub charter party, all disputes arising thereunder are to be submitted to arbitration in London with English Law to apply.

10.     Despite due demand, HYRAM has failed and/or refused to pay the sums due and owing to Plaintiff.

11.     Plaintiff is preparing to commence arbitration proceedings against HYRAM and does not waive its right to arbitrate its claims against HYRAM.

12.     Interest, costs and attorneys' fees are routinely awarded to the prevailing party in proceedings subject to English law. As best as can now be estimated, Plaintiff expects to recover the following amounts in an arbitration award conducted pursuant to English law:

| | | |
|---|---|---|
| A. | Principal claims: | |
| | *Settlement with head owner:* | $25,000.00; |
| | *Payment of head owner's arbitration costs:* | $ 1,194.89[1]; |
| B. | Interest on principal claims: | |
| | 2 years at 7.5%, compounded quarterly | $ 4,196.99; |
| C. | Incurred attorneys' fees: | $28,137.89; |
| D. | Incurred arbitration costs: | $ 1,465.20; |
| E. | Estimated attorneys' fees | $31,500.00; and |
| F. | Estimated arbitration expenses: | $ 2,700.00. |
| **Total:** | | **$94,194.97.** |

13.     The Defendant cannot be found within this District within the meaning of Rule B for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of

---

[1] USD equivalent of £664 as of September 15, 2008.

Civil Procedure ("Supplemental Rule B")[2] but, upon information and belief, Defendant has, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of one or more garnishees which are believed to be due and owing to the Defendant.

14.    The Plaintiff seeks an order from this court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Supplemental Rule B, and also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching, *inter alia*, any assets of the Defendant held by the aforesaid garnishee for the purpose of obtaining personal jurisdiction over the Defendant, and to secure the Plaintiff's claims as described above.

**WHEREFORE**, Plaintiff prays:

A.    That process in due form of law issue against the Defendant, citing it to appear and answer under oath all and singular the matters alleged in the Verified Complaint;

B.    That the Court retain jurisdiction to compel the Defendant to arbitrate in accordance with the United States Arbitration Act, 9 U.S.C. § 1 *et seq.*;

C.    That since the Defendant cannot be found within this District pursuant to Supplemental Rule B, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Supplemental Rule B, and also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching all goods, chattels, credits, letters of credit, bills of lading, effects, debts and monies, tangible or intangible, or any other funds held by any garnishee within the District which are due and owing to the Defendant, in the amount of $94,194.97 calculated to date to secure the Plaintiff's claims, and that all persons

---

[2] See Affidavit of Kevin J. Lennon in Support of Prayer for Issuance of Maritime Attachment attached hereto as Exhibit 3.

4

claiming any interest in the same be cited to appear and pursuant to Supplemental Rule B answer the matters alleged in the Complaint;

D.    That this Court recognize and confirm any arbitration award(s) or judgment(s) rendered on the claims set forth herein as a Judgment of this Court;

E.    That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof;

F.    That in the alternative this Court enter judgment against the Defendant on the claims set forth herein;

G.    That this Court award Plaintiff its attorney's fees and costs of this action; and

H.    That the Plaintiff have such other, further and different relief as the Court may deem just and proper.

Dated: October 20, 2008
       Southport, CT

The Plaintiff,
DAEWOO LOGISTICS CORP.

By: _____
    Kevin J. Lennon
    Anne C. LeVasseur

LENNON, MURPHY & LENNON, LLC
420 Lexington Ave., Suite 300
New York, NY 10170
(212) 490-6050 – phone
(212) 490-6070 – fax
kjl@lenmur.com
acl@lenmur.com

## ATTORNEY'S VERIFICATION

State of Connecticut )
                     )      ss.:    Town of Southport
County of Fairfield  )

1.  My name is Kevin J. Lennon.

2.  I am over 18 years of age, of sound mind, capable of making this

Verification, and fully competent to testify to all matters stated herein.

3.  I am a partner in the firm of Lennon, Murphy & Lennon, LLC, attorneys for the
Plaintiff.

4.  I have read the foregoing Verified Complaint and know the contents

thereof and believe the same to be true and accurate to the best of my knowledge, information
and belief.

5.  The reason why this Verification is being made by the deponent and not

by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now
within this District.

6.  The source of my knowledge and the grounds for my belief are the

statements made, and the documents and information received from, the Plaintiff and agents
and/or representatives of the Plaintiff.

7.  I am authorized to make this Verification on behalf of the Plaintiff.

Dated:    October 20, 2008
          Southport, CT

Kevin J. Lennon

6

# EXHIBIT 1
## *Charter Party dated April 23, 2004*

ORIGINAL

**Time Charter**

3737/GI.



intermar n.v.

Magerstraan 3
B-2030 Calpella (Antwerp)
Belgium

Phone (03) 565 61 61
Telex 31013 intmar
TeleFax (03) 562 07 02

GOVERNMENT FORM
*Approved by the New York Produce Exchange*
November 6th, 1913 - Amended October 20th, 1921; August 6th, 1931; October 3rd, 1946

1 **This Charter Party,** made and concluded in *Antwerp, 23rd* ...................................................day of *April*.....................19 *2004*

2 Between *DAEWOO LOGISTIC, SEOUL - KOREA as Disponent* .............................................................................

3 Owners of the good *Malta flag* .......................... ~~Steamship~~/Motorship *MV "PIONEER SPIRIT"* ................................ of ................................

4 of *12233* ................. tons gross register, and *7042* ................. tons net register, ~~having engines of~~ ................. ~~indicated horse power~~

5 and with hull, machinery and equipment in a thoroughly efficient state, and classed .........................................

6 of about *821985/783726* ...... cubic foot *grain/bale* capacity, and about *16113 metric* ......................... tons of 2240 lbs.

7 deadweight capacity (~~cargo-and-bunkers, including fuel, water and stores not exceeding one-and one-half percent of ship's deadweight capacity,~~

8 ~~allowing minimum of fifty tons~~) on a draft of *9.03* ......... ~~feet~~ *meters* ... ~~inches~~ on *salt* water Summer freeboard, inclusive of permanent bunkers,

9 which are of the capacity of about.................................................................... tons of fuel, and capable of steaming, fully laden, under good weather

10 conditions about *13.5* knots on a consumption of about *21* tons of *IFO (180 RME25) + about 2.5 metric tons MGO.* ~~best Welsh coal—~~best grade fuel oil—~~best grade Diesel oil,~~

11 now *trading* ...........................................................................................................................................................

12 ....................................... and *MESSRS. HYRAM MARITIME S.A.L.* ................. Charterers of the City of *TYR - LEBANON* ...

13 **Witnesseth,** That the said Owners agree to let, and the said Charterers agree to hire the said vessel, from the time of delivery, for *about 2 laden legs, intention first leg bagged rice Ho Chi Minh City / West Africa and second leg bagged sugar*

14 *Brazil / West Africa - always afloat, always within Institute Warranty Limits, under no circumstances vessel to be*

15 *required to break/force ice neither to follow icebreaker. Duration about 4 months without guarantee* within below

16 mentioned trading limits.

Charterers to have liberty to sublet the vessel for all or any part of the time covered by this Charter, but Charterers remaining responsible for

17 the fulfilment of this Charter Party. *Acceptance of delivery of the vessel shall not constitute any waiver of Owners'*

*obligations;*

18 Vessel to be placed at the disposal of the Charterers, ~~at~~ *on dropping last outward seapilot DALIAN, CHINA, any time,*

19 *day/night, Sundays and holidays included.*

20 ~~in such dock or at such wharf or place (where she may safely lie, always afloat, at all times of tide, except on otherwise provided for in clause No. 6,~~ as

21 the Charterers may direct. ~~If such dock, wharf or place be not available-time to count as laytime.~~ Vessel on *arrival loading port*

her delivery to be

22 ready to receive *any permissible* cargo with clean-swept holds and *throughout the period of this Charter unless caused by*

*Charterers or their Agents fault* tight, staunch, strong and in every way fitted for the service, having water ballast, winches and

23 donkey boiler with sufficient steam power, or if not equipped with donkey boiler, then other power sufficient to run all the *cranes* winches at one and

24 the same time (and with full complement of officers, seamen, engineers and firemen for a vessel of her tonnage), to be employed, in carrying lawful merchan-

time (and with full complement of officers, seamen, engineers and firemen for a vessel of her tonnage), to be employed, in carrying lawful merchandise,

~~disc, including petroleum or its products in proper containers, excluding see Clause 41......~~

~~(vessel is not to be employed in the carriage of Live Stock, but Charterers are to have the privilege of shipping a small number on deck at their risk~~

~~all necessary fittings and other requirements to be for account of Charterers), in such lawful trades between safe and/or ports in British North~~

~~America, and/or United States of America, and/or West Indies, and/or Central America, and/or Caribbean Sea, and/or Gulf of Mexico, and/or~~ ~~and/or Europe~~

~~Mexico, and/or South America~~

~~and/or Africa, and/or Asia, and/or Australia, and/or Tasmania, and/or New Zealand, but excluding Magdalene River, River St. Lawrence between~~ 

~~Quebec 31st and May 15th, Hudson Bay and all unsafe ports, also excluding, when out of season, White Sea, Black Sea and the Baltic,~~

in trading area allowed (see Clause 79) ......

......

......

as the Charterers or their Agents shall direct, on the following conditions:

1. That *whilst on hire* the Owners shall provide and pay for all provisions, *fresh water, wages including all Officer's/Crew's*

*overtime* and consular shipping and discharging fees of the Crew; shall pay for the

insurance of the vessel, also for all the cabin, deck, engine-room and other necessary stores, including boiler water and maintain her class and keep

the vessel in a thoroughly efficient state in hull, machinery and equipment *with inspection certificates necessary to comply with all*

*current requirements at all ports of call and canal* for and during the service.

2. That the Charterers shall provide and pay for all the fuel except *lubricating oil* as otherwise agreed, Port Charges, *compulsory*

Pilotages, Agencies, Commissions,

Consular Charges (except those pertaining to the Crew), and all other usual expenses except those before stated, but when the vessel puts into

a port for causes for which vessel is/*Owners are* responsible, then all such charges incurred shall be paid by the Owners. Fumigations ordered because

of

illness of the crew to be for Owners account. Fumigations ordered because of cargoes carried or ports visited while vessel is employed under this

charter to be for Charterers account. All other fumigations to be for Charterers account after vessel has been on charter for a continuous period

of six months or more.

Charterers are to provide necessary dunnage and shifting boards, also any extra fittings requisite for a special trade or unusual cargo, but

Owners to allow them the use of any dunnage and shifting boards already aboard vessel *subject to Master's approval*. Charterers to have the

privilege of using shifting boards

for dunnage, they making good any damage thereto.

3. ~~That the Charterers, at the port of delivery, and the Owners, at the port of re-delivery, shall take over and pay for all fuel remaining on~~

~~board the vessel at the current prices in the respective ports; the vessel to be delivered with not less than............tons and not more than~~

............tons and to be delivered with not less than............tons and not more than......................*tons. See Clause 36.*

4. That the Charterers shall pay for the use and hire of the said Vessel at the rate of *US-$ 12,000.- daily including overtime payable*

*15 days in advance* .................................. United States Currency per ton on vessel's total deadweight carrying capacity, including bunkers and

~~stores, on~~..................................~~summer freeboard, per Calendar Month, commencing on and from the day/*time* of her delivery, as aforesaid, and at~~

and after the same rate for any part of a *day* month; hire to continue until the hour of the day of her re-delivery in like good order and condition, ordinary

wear and tear excepted, to the Owners (unless lost) at *on dropping last outward sea pilot one safe port ANGOLA/BANJUL*

*range in Charterers' option, any time, day/night, Sundays and holidays included* unless otherwise mutually agreed.

Charterers are to give Owners not less than *20/15/7/5 days approximate*

notice of vessels expected date of re-delivery, and probable port *and 3/2/1 day(s) definite notice.* Charterers to keep Owners

*advised of vessel's movements and notify Owners immediately for unforeseen delay.*

5. Payment of said hire to be made in New York in cash in United States Currency, *every 15 days ~~semi-monthly~~ in advance, to Owners'*

*bank account as per Clause 29* and for the last *15 days* half month or

59  part of same the approximate amount of hire, and should same and cover the actual time, hire is to be paid *but always subject to the working of*

*Clause 29* ~~for the balance day by day as it becomes~~

60  ~~due. If so required by Owners, unless bank guarantee or deposit is made by the Charterers,~~ otherwise falling the punctual and regular payment of the
61  hire, or bank guarantee, or on any breach of this Charter Party, the Owners shall be at liberty to withdraw the vessel from the service of the Char-
62  terers, without prejudice to any claim they (the Owners) may otherwise have on the Charterers. ~~Time to count from 7 a.m. on the working day~~
63  ~~following that on which written notice of readiness has been given to Charterers or their Agents before 4 p.m., but if required by Charterers, they~~
64  ~~to have the privilege of using vessel's steam winches to unload cargo. Night~~

65  Cash for vessel's ordinary disbursements at any port may be advanced as required by the Captain, by the Charterers or their Agents, subject
66  to 2 1/2% commission and such advances shall be deducted from the hire. The Charterers, however, shall in no way be responsible for the application
67  of such advances.

68  6.   That the cargo or cargoes be laden and/or discharged in any *safe* dock or at any *safe* wharf or *safe* place that Charterers or their Agents may
69  direct, provided the vessel can safely lie always afloat at any time of tide, ~~except at such place where it is customary for similar size vessels to safely~~
70  lie aground.

71  7.   That the whole reach of the Vessel's Hold, Decks, and usual places of loading (not more than she can reasonably stow and carry), also
72  accommodations for Supercargo, if carried, shall be at the Charterers' disposal, reserving only proper and sufficient space for Ship's officers, crew,
73  tackle, apparel, furniture, provision, stores and fuel. ~~Charterers have the privilege of passengers as far as accommodations allow, Charterers~~
74  ~~paying Owners ......................... per day per passenger for accommodation, and meals. However, it is agreed that in case any fine or extra expenses are~~
75  ~~incurred in the consequence of the carriage of passengers, Charterers are to bear such risk and expense.   No passengers are allowed.~~

76  8.   That the Captain shall prosecute his voyages with the utmost despatch, and shall render all customary assistance with ship's crew and
77  boats. The Captain (although appointed by the Owners), shall be under the orders and directions of the Charterers as regards employment and
78  agency, and Charterers are to load, stow, *tally, dunnage, lash, secure, unlash, undunnage, unsecure, discharge* and trim the
       cargo at their expense under the supervision of the Captain, who is to sign Bills of Lading for

79  cargo as presented, in conformity with Mate's or Tally Clerk's receipts *unless Charterers are making use of their authority to sign as*

*per Clause 49.*

80  9.   That if the Charterers shall have reason to be dissatisfied with the conduct of the Captain, Officers, or Engineers, the Owners shall on
81  receiving particulars of the complaint, investigate the same, and, if necessary, make a change in the appointments.

82  10.   That the Charterers shall have permission to appoint a Supercargo, who shall accompany the vessel *under his own risk and provided*
       *that prior to his boarding he has signed and delivered to vessel's Master/Owners relevant Letter of Indemnity* and
       see that voyages are prosecuted

83  with the utmost despatch. He is to be furnished with free accommodation, and same fare as provided for Captain's table. Charterers paying at the
84  rate of *US-$ 15.- $1.00* per day. Owners to victual Pilots and Customs Officers, and also, when authorized by Charterers or their Agents, to victual
       Tally

85  Clerks, Stevedore's foreman, etc., Charterers paying at the current rate per meal, for all such victualling.   *See Clause 45.*

86  11.   That the Charterers shall furnish the Captain from time to time with all requisite instructions and sailing directions, in writing *in English,* and
       the

87  Captain shall keep a full and correct Log of the voyage or voyages, which are to be patent to the Charterers or their Agents, and furnish the Char-
88  terers, their Agents or Supercargo, when required, with a true copy of daily *deck and engine* Logs *in English,* showing the course of the vessel
       and distance run and the con-

89  sumption of fuel.

90  12.   That the Captain shall use diligence in caring for the ventilation of the cargo.

91  ~~13.   That the Charterers shall have the option of continuing this charter for a further period of ......................... ~~days previous to the expiration of the first named term, or any declared option,~~

92

93  ~~on giving written notice thereof to the Owners or their Agents~~



Case 1:08-cv-09002-WHP   Document 6   Filed 01/16/09   Page 11 of 60

14. That if required by Charterers, time not to commence before *28th April 2004* ............................................... and should vessel not have *been delivered* given written notice of readiness on or before *3rd May 2004* ............................... but not later than 4 p.m. Charterers or their Agents to have the option of cancelling this Charter at any time not later than the day of vessel's readiness.

15. That in the event of the loss of time from deficiency *and/or default* of men or *deficiency of* stores, fire, breakdown or damages to hull, machinery or equipment,
grounding, detention by average accidents to ship or cargo, drydocking for the purpose of examination or painting bottom, or by any other cause preventing the full working of the vessel, the payment of hire shall cease for the time thereby lost; and if upon the voyage the speed be reduced by defect in or breakdown of any part of her hull, machinery or equipment, the time so lost, and the cost of any extra fuel consumed in consequence thereof, and all *proven and directly related* extra expenses shall be deducted from the hire.

16. That should the Vessel be lost, money paid in advance and not earned (reckoning from the date of loss or being last heard of) shall be returned to the Charterers at once. The act of God, enemies, fire, restraint of Princes, Rulers and People, and all dangers and accidents of the Seas, Rivers, Machinery, Boilers and Steam Navigation, and errors of Navigation throughout this Charter Party, always mutually excepted.

The vessel shall have the liberty to sail with or without pilots, *and English law to apply* to tow and to be towed, to assist vessels in distress, and to deviate for the purpose of saving life and property.

17. That should any dispute arise between Owners and the Charterers, the matter in dispute shall be referred to three persons in *London* at New York,

one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them, shall be final, and for the purpose of enforcing any award, this agreement may be made a rule of the Court. The Arbitrators shall be commercial *shipping* men, *conversant with shipping matter and affairs. Any claim must be made in writing and claimant arbitrator appointed within 12 months of final discharge and where this provision is not complied with the claim/dispute, whether pertaining to holiday or quantum or both shall be deemed to be extinguished and cease to exist.*

18. That the Owners shall have a lien upon all cargoes, and all sub-freights/sub-hires for any amounts due under this Charter, including General Average contributions, and the Charterers to have a lien on the Ship for all monies paid in advance and not earned, and any overpaid hire or excess deposit to be returned at once. Charterers will not suffer, nor permit to be continued, any lien or encumbrance incurred by them or their agents, which might have priority over the life and interest of the owners in the vessel.

19. That all dunclues and salvage shall be for Owners' and Charterers' equal benefit after deducting Owners' and Charterers' expenses and Crew's proportion. General Average shall be adjusted, stated and settled, according to Rules 1 to 15 inclusive, 17 to 22, inclusive, and Rule F of York-Antwerp Rules *1974, or any amendment, in London* 1924, at such port or place in the United States as may be selected by the carrier, and to include outstanding provided for by these terms and conditions.

[struck-through lines continue]

In the event of accident, danger, damage or disaster before or after commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which or for the consequence of which, the carrier is not responsible, by statute, contract, or otherwise, the goods, the shipper and the consignee, jointly and severally, shall contribute with the carrier in general average to the payment of any sacrifices, losses, or expenses of a general average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the goods. If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully and in the same manner as if such salving ship or



131 ~~ships-belonged-to-strangers~~ **It is understood that the charter hire not to contribute to General Average.**

132 Provisions as to General Average in accordance with the above are to be included in all bills of lading issued hereunder.

133 20. Fuel used by the vessel while off hire, ~~also-for-cooking, condensing-water, or-for-grate-and steam~~ to be agreed to as to quantity, and the

134 cost of replacing same, to be allowed by Owners.

135 21. ~~That-as-the-vessel-may-be-from-time-to-time-employed-in-tropical-waters-during-its-term-of-this-Charter,-Vessel-is-to-be-docked-at-a~~

136 ~~convenient-place, bottom-cleaned-and-painted-whenever-Charterer-and-Captain-think-necessary, at-least-once-in-every-six-months, reckoning-from~~

137 ~~time-of-last-painting, and-payment-of-the-hire-to-be-suspended-until-she-is-again-in-proper-state-for-the-service.~~

139 22. Owners shall maintain the gear of the ship as fitted, providing gear (for all derricks) capable of handling lifts up to *as specified in Clause*

140 *31 and Owners to provide on board the vessel sufficient light clusters as on board for night work at all hatches*

*simultaneously free of charge to Charterers and are to maintain same in efficient condition throughout this*

*Charter.* ~~Stevedore-also~~

141 ~~providing-ropes, falls, slings-and-blocks, if-vessel-is-fitted-with-derrick-capable-of-handling-heavier-lifts, Owners-are-to-provide-necessary-gear-for~~

142 ~~same, otherwise-equipment-and-gear-for-heavier-lifts-shall-be-for-Charterers'-account. Owners-also-to-provide-at-the-vessel-lanterns-and-oil-for~~

143 ~~night-work, and-vessel-to-give-use-of-electric-light-when-so-fitted, but-any-additional-lights-over-those-on-board-to-be-at-Charterers'-expense. The~~

144 ~~Charterers-to-have-the-use-of-any-gear-on-board-the-vessel.~~

145 23. Vessel to work night and day, *Sundays and holidays included,* if required by Charterers, and all winches to be at Charterers' disposal

during loading and discharging,

146 ~~steamer-to-provide-one-winchman-per-hatch-to-work-winches-day-and-night, as-required. Charterers-agreeing-to-pay-officers, engineers, winchmen,~~

147 ~~deck-hands-and-dockkeepers-for-overtime-work-done-in-accordance-with-the-working-hours-and-rates-stated-in-the-ship's-articles. If-the-rules-of-the~~

148 port, or-labor-unions, prevent crew ~~from-driving-winches,~~ *qualified* shore Winchmen to be paid by Charterers, in the event of a disabled winch or

winches, or

149 insufficient power to operate winches, Owners to pay for above engine, or engines, in lieu thereof, if required, and pay any loss of time occasioned

150 thereby.

151 24. It is also mutually agreed that this Charter is subject to all the terms and provisions of and all the exemptions from liability contained

152 in the Act of Congress of the United States approved on the 13th day of February, 1893, and entitled "An Act relating to Navigation of Vessels,

153 etc.," in respect of all cargo shipped under this charter to or from the United States of America. It is further subject to the following clauses, both

154 of which are to be included in all bills of lading issued hereunder:

U.S.A. Clause Paramount

155 ~~U.S.A. Clause Paramount~~

156 ~~This-bill-of-lading-shall-have-effect-subject-to-the-provisions-of-the-Carriage-of-Goods-by-Sea-Act-of-the-United-States, approved-April~~

157 ~~16,-1936,-which-shall-be-deemed-to-be-incorporated-herein,-and-nothing-herein-contained-shall-be-deemed-a-surrender-by-the-carrier-of~~

158 ~~any-of-its-rights-or-immunities-or-an-increase-of-any-of-its-responsibilities-or-liabilities-under-said-Act. If-any-term-of-this-bill-of-lading~~

159 ~~be-repugnant-to-said-Act-to-any-extent, such-term-shall-be-void-to-that-extent, but-no-further.~~

160 ~~Both-to-Blame-Collision-Clause~~

161 ~~If-the-ship-comes-into-collision-with-another-ship-as-a-result-of-the-negligence-of-the-other-ship-and-any-act-neglect-or-default-of-the~~

162 ~~Master, mariner, pilot-or-the-servants-of-the-Carrier-in-the-navigation-or-in-the-management-of-the-ship, the-owners-of-the-goods-carried~~

163 ~~hereunder-will-indemnify-the-Carrier-against-all-loss-or-liability-to-the-other-or-non-carrying-ship-or-her-owners-in-so-far-as-such-loss~~

164 ~~or-liability-represents-loss-of-or-damage-to-or-any-claim-whatsoever-of-the-owners-of-said-goods, paid-or-payable-by-the-other-or-non-~~

165 ~~carrying-ship-or-her-owners-to-the-owners-of-said-goods-and-set-off, recouped-or-recovered-by-the-other-or-non-carrying-ship-or-her~~

166 ~~owners-as-part-of-their-claim-against-the-carrying-ship-or-carrier.~~

167 25. The vessel shall not be required to enter any ice-bound port, or any port where lights or light-ships have been or are about to be with-

168 drawn by reason of ice, or where there is risk that in the ordinary course of things the vessel will not be able on account of ice to safely enter the

169 port or to get out after having completed loading or discharging.

170 26. Nothing herein stated is to be construed as a demise of the vessel to the Time Charterers. The owners to remain responsible for the

171 navigation of the vessel, *acts of pilots,* insurance, crew, and all other matters, same as when trading for their own account.

172    27.   A commission of 2 1/2 1.25 per cent is payable by the Vessel and Owners to
173    *SEOWON CHARTERING CORP, KOREA + 3, 75% to INTERMAR N.V., ANTWERP for division.*.............................
174    on hire earned and paid under this Charter, and also upon any continuation or extension of this Charter.
175    28.   An address commission of 2 1/2 per cent payable to .......................................... on the hire earned and paid under this Charter.

This Charter Party is a computer generated copy of the NYPE (Revised 3rd October, 1946) form printed under licence from the Association of Ship Brokers & Agents (U.S.A) Inc., using software which is the copyright of Strategic Software Limited.

It is a precise copy of the original document which can be modified, amended or added to only by the striking out of original characters, or the insertion of new characters, such characters being clearly highlighted by underlining or use of colour or use of a larger font and marked as having been made by the licensee or end user as appropriate and not by the author.

*CLAUSE 29 to 117, both inclusive as attached, are to be fully incorporated in this Charterparty.*

**OWNERS**                                                                     **CHARTERERS**

DAEWOO LOGISTICS CO., LTD.                                        INTERMAR N.V.

Authorized Signature

intermar n.v.
ANTWERP
tx 71042    ph 03 / 605 00 24
fax 03 / 605 02 00

 **intermar n.v.**

ADDITIONAL CLAUSES TO CHARTERPARTY FOR

MV "PIONEER SPIRIT", DATED ANTWERP 23RD APRIL 2004.

CLAUSE 29 : HIRE PAYMENT CLAUSE
-------------
A) First hire and value of bunkers on delivery to be paid
within 3 banking days after vessel's delivery and Charterers
receipt of original signed Charter Party and relevant copy of
invoice in Seoul.
Owners to have the benefit of using Charterers' agents for
minor Owners items at no extra agency fee.
Owners will settle their expenses direct with agents at the
various ports.
No deductions for Owners' expenses to be made from hire
payments.
Charterers are entitled to deduct from last sufficient hire
payments estimated bunkers on redelivery value.

B) Where there is any failure to make "punctual and regular
payment" due to oversight or negligence or error or omission
of Charterers' employees, bankers of Agents or otherwise for
any reason where is absence of intention to fail to make
payment as set out, Charterers' shall be given by Owners 3
(three) banking days written notice to rectify the failure and
where so rectified the payment shall stand as "punctual and
regular payment". If there is a failure of the bank,
Charterers to have 3 banking days grace to rectify the
failure.

C) In the event that the vessel is expected to be redelivered
to the Owners prior to the expiry of the last 15 days period
that would be covered by the next payment of hire, Charterers
shall be entitled to effect payment of hire on the basis of
the estimated time necessary to complete the service.

D) Cash money drawn by the Master shall be taken at the office
of the port Agents or shall be drawn by the Master from the
bank. In the event that the Master requests delivery of cash
money at the vessel, all risks and expenses involved in
arranging and making such delivery of cash money to the vessel
shall be borne by the Owners.

*X.T*    ./..

 **intermar n.v.**

## MV "PIONEER SPIRIT" - C/P DD 23/04/2004 - PAGE 2 OF 31

CLAUSE 29 : CONTINUATION
------------

E) Notwithstanding anything contained herein to the contrary,
it is understood that if at any time during the currency of
this Charter the hire payment shall become due on a Saturday,
Sunday or Holiday or outside normal banking hours, payment of
hire may be made on the next banking day immediately following
the date on which hire became due and such payment shall stand
as "punctual and regular payment".

F) Charterers have the right to withhold from Charter hire
during the period of this Charter such reasonable amounts due
them for undisputed off-hire time, but proper supporting
statements are to be sent to Owners as soon as possible and
original invoice.

G) Bank for hire payment :

ABA NO 021000021
CORRES. BANK : JP MORGAN CHASE BANK, NEW YORK
SWIFT CODE : KOAM KRSE
KORAM BANK DAEWOO CENTER BRANCH SEOUL, KOREA
ACCT. NO: 167-00204-438 (USD)
IN FAVOUR OF : KOREA MERCHANT MARINE CO., LTD
REF: MV PIONEER SPIRIT / HYRAM

CLAUSE 30 :
-----------

Bunkers on delivery as on board estimated about 250 metric
tons of IFO and about 100 metric tons of MGO. (Subject
possible amendment if Master so desires)
Bunkers on redelivery about same quantity as on delivery.
Bunker price US-$ 195,- per metric tons for IFO and US-$ 340,-
per metric ton for MGO (DMA).

$T.y$

./..

 intermar n.v.

## MV "PIONEER SPIRIT" - C/P DD 23/04/2004 - PAGE 3 OF 31

CLAUSE 31 : VESSEL'S DESCRIPTION
-----------
MV PIONEER SPIRIT
-----------------
CNTR/MPP 16113 DWT ON 9.93M FULLY CONTR FTTD - ABT 438 TEU
BLT 99 - MALTA FLG  LOA/BM 158.70 / 22.80
4/7 HO/HA  (NOS 2,3,4 TWIN HA) 821985 / 783726 GR/BL
CRANES 6X12.5 (COMBI 3X25)
ABT 13,5 KNTS ON ABT 21.00MT IFO(MAX180CSTRME 25) + ABT 2,5MT
MGO
NO.1 HO PARTLY T/D (T/D EXIST BUT WOUT T/D COVERS)
CONTR CAP: HO 298 TEU OR 146 FEU + 6 TEU
H/COVERS 140 TEU OR 68 FEU
ELEC VENT - 6 AIRCHANGES
NO 1 HO PARTLY SD NO HA COVERS IN TWEEN DECK
ALL TWIN DECK (EXCEPT NO1) HV LONGITUDINAL GIRDER
ALL TWIN DECKS FLUSH
LOWER HO STEEL FLOORED-FLUSH CONTAINER SOCKETS
NO 2/3/4 LOWER HO HV SUPPORTING PILLARS AMIDSHIPS

-HEAD OWNERS: PIONEER SPIRIT MARITIME LIMITED, VALLETA MALTA
              C/O INTERUNITY MANAGEMENT CORPORATION
              69 ETHNIKIS ANTISTASEOS STR
              15231 ATHENS GREECE

-DISPONENT OWNERS : DAEWOO LOGISTIC 6TH FLOOR /DAEWOO CENTER
    BUILDING 541 NAMDAEMUNRO 5 - KACHUNG-KU SEOUL KOREA
    TEL : 82 02 759 3702 FAX : 82 02 759 2664 TLX : K36018
    EMAIL : KMM@DAEWOO.COM - PUBLIC ADDRESS

-LOWER HOLDS DIMENSIONS

| NR.LENGTH | BREADTH | | HEIGHT |
|---|---|---|---|
| | FWD | AFT | |
| 1  15,00 | 2.90/16.37 | 10.65/21.28 | 11.90 |
| 2  30.70 | 10.35/15.60 | 18.40/21.19 | 6.90 |
| 3  27.96 | 20.40/22.15 | 20.40/22.15 | 6.90 |
| 4  14.00 | 19.60/22.08 | 13.80/20.98 | 5.90 |

$T_e y$                          ./..

Case 1:08-cv-09002-WHP   Document 6   Filed 01/16/09   Page 17 of 60

 intermar n.v.

CLAUSE 31 : CONTINUATION :
------------
-HATCH SIZE W/DECK
      (L/B)  NR.1 : 12.60 X 10.20
      NR.2 :  25.16 X 7.80 X 2
      NR.3 :  25.16 X 7.80 X 2
      NR.4 :  12.58 X 7.80 X 2

      HATCH SIZE TWIN DECK :
      (L/B)  NR.2 : 13.30 X 9.92 AND 11.30 X 6.00 X 2
      NR.3 :  27.50 X 9.92 X 2
      NR.4 :  13.30 X 9.92 X 2

-CONSTANTS EXCL. FW: 250 MT

-CONSUMPTION :  21 MT IFO PLUS 2.5 MT MGO
 VESSEL CONSUMES MGO WHILST ENTERING/LEAVING PORT AND/OR
 MANOEUVRING AND/OR NAVIGATING IN SHALLOW, NARROW OR
 RESTRICTED WATERS
 PORT CONSUMPTION :  MGO 2.5 MT (IDLE) - MGO  3.0-3.5 MT
 (WORKING)

-STRENGTH (MT/M2)
      H/COVERS :  1.96
      TWIN DECKS : 2.66
      TWIN DECK COVERS : 3.84
      TANK TOP NR.1 : 7.58
      TANK TOP NR.2-3-4 : 12.16

-CARGO GEAR :  6 X 12,5 T OR 3 X 25 T IN CASE COMBINED
 CARGO GEAR LAYOUT :  BETWEEN HOLDS 1-2, 2-3, 3-4
 CONFIRM SWL - ALSO WARRANT IN ORDER/SAFETY WHEN COMBINED
 CARGO GEAR HOISTING SPEED : AT 3,2 TONS 73,3 M/MIN - AT 12,5
 TONS 19,0 M/MINS

-OWNERS ISM CERTIFIED

-VSL ISM CERTIFIED

-TPC: 27.3

-GRT / NRT : 12,233 / 7,042

./..

Case 1:08-cv-09002-WHP   Document 6   Filed 01/16/09   Page 18 of 60

 intermar n.v.

CLAUSE 31 : CONTINUATION
------------
-OWNS WARRANT NO HIDRANCE, NO PILLAR, NO DEEP(BALLAST) TANK N
HOLDS
NR.2 LOWER HOLD HAS 4 VERTICAL PILLARS AMIDSHIPS
NR.3 LOWER HOLD HAS 4 VERTICAL PILLARS AMIDSHIPS 3M
NR.4 LOWER HOLD HAS 2 VERTICAL PILLAR AMIDSHIPS

-LAST 3 CARGOES: BULK SUGAR - STEEL PRODS - BAGED RICE

-P&I CLUB : U.K. LONDON

-MASTER/CREW NATIONALITY UKRANIAN AND PHILIPINO
-H&M VALUE : USD 12.5 MILLION
-H&M UNDERWITERS : VESSEL INSURED IN LONDON, FRENCH, USA AND
ITALIAN MARKETS
-HATCH COVER TYPE:MCGREGOR/HYDRAULIC HATCH COVERS ON W/DECK

-INMARSAT NO : 424843410
-CALL SIGN : 9HDS6

ADDITIONAL INFO :

VESSEL IN DRYDOCK AT DALIAN AND EXPECTED ETS 28/29TH APRIL
AND AGENT DETAIL ASF:
"CHINA MARINE SHIPPING AGENCY LIAONING COMPANY LTD"
TEL.+86 411 2551171 / 2623929
FAX.+86 411 2803858 / 2808683
E-MAIL: SINOAGT@MAIL.DLPTT.LN.CN
CONTACTING PERSON: MR.LIU HAIBO
DIRECT LINE: +86 411 2551162
MOB: +86 13304115736

- HOW TO COMMUNICATE WITH VSL : INMARSATC.424843410
                                EMAIL 42484341@INMC.EIK.COM

- LAST CARGO BULK SUGAR
- LAST RICE CARGO 14000 EX N CHINA TO KOREA
- USABLE BUNKER CAPITY IFO 1200 AND 250 MT MDO
  (BEING 100 PCT LESS SAFETY MARGIN LESS UNPUMPABLE)
- DWAT BSS 21 AND 20' FWAD (

| DRAFT(MTR) | DW/DENSITY 1.000 | DW/DENSITY 1.025 |
|---|---|---|
| 6.10 | 6015MT | 6327MT |
| 6.40 | 6720MT | 7051MT |

./..

 **intermar n.v.**

MV "PIONEER SPIRIT" - C/P DD 23/04/2004 - PAGE 6 OF 31

31. CONTINUATION :
------------------------

- AVERAGE FW ROB 180 CBM
- ESTIMATED LOADING OF BGD RICE ABT 14650 (SISTER VSL LOADED
  LAST YEAR 14589.28 MT)
- TROPICAL DWAT 16684 MT DRAFT 10.14 MTRS

CLAUSE 32 : DELETED.
------------

CLAUSE 33 :
------------
Charterers to have benefits of any return insurance premium
receivable by Owners from their Underwriters, as and when
received from Underwriters, by reason of the vessel being in
port for a minimum period of 30 days, if on full hire for this
period and pro-rata for the time actually on-hire.

CLAUSE 34 :
------------
On and off hire surveys shall be held jointly between
Charterers and Owners by one single surveyor to be mutually
agreed.  On hire survey to be appointed by Charterers with
Owners' prior approval. On-hire survey to be held at  first
loading port in Owners' time subject to actual delay to
Charterers operation and off-hire survey to be held in
Charterers' time at last discharge port before redelivery.
Expenses for on/off-hire survey to be equally shared between
Owners and Charterers.

CLAUSE 35 :
------------
Both parties to have the option of canceling this Charter
Party with reasonable notice if War breaks out between any two
or more of the following countries to such an extent as to
render the continuation of the Charter Party impossible and
provided that vessel is cargo free : U.S.A., U.S.S.R., Great
Britain, Japan, the People's Republic of China, France,
Republic of Korea, North Korea, and North Yemen.

./..

Case 1:08-cv-09002-WHP   Document 6   Filed 01/16/09   Page 20 of 60

 **intermar n.v.**

CLAUSE 36 :
-----------
Should the vessel put back whilst on voyage by reason of an
accident or breakdown or deviation upon the course of the
voyage caused by sickness of or any accidents to the crew or
any person on board the vessel other than persons traveling at
the request of the Charterers, or by reason of the refusal of
the Captain or crew to perform their duties, the hire shall be
suspended from the time of putting back until she be again in
the same position or equidistant position and resumes the
voyage.
Bunkers consumed during the period shall be for Owners'
account.
Especially the following events to be deemed as off-hire until
the vessel be again in the same or equivalent position and
resumed the voyage :

A) In the event of deviation from loading invalid crew and/or
stowaway and from salvage.

B)  In the event of loss of time strike of the crew.

C)  In the event of deviation by alleged oil pollution.


CLAUSE 37 :
-----------
Charterers shall not in any event be liable for claims in
connection with stevedore damages suffered by the vessel
and/or equipment unless :

A) Master advises Charterers or their Agents in writing or by
cable within 24 hours of occurrence of any damage for which
Master considers Charterers liable so that Charterers may
claim against stevedores, or parties responsible. In case of
hidden damage, same to be reported as soon as discovered.

B) Such damages shall have been entered in vessel's logbooks
and

$T_{c} y$   ./..

 intermar n.v.

<u>MV "PIONEER SPIRIT" - C/P DD 23/04/2004 - PAGE 8 OF 31</u>

CLAUSE 37 : CONTINUATION
-----------
C) Master shall also have held stevedores or parties
responsible for damage liable in writing or by cable/telex
with copy to Charterers that any case, Charterers to remain
ultimate responsible.

If extent of damage cannot be ascertained on occurrence,
Owners/Master must report occurrence of damage in accordance
with (A), (B), and (C) as above and details may follow when
examination possible. If at time of redelivery there remains
outstanding damage for which Charterers may be liable but
which, without affecting the seaworthiness and/or
cargoworthiness and/or trading capabilities of the vessel,
which should be conflicted by class society, can be repaired
by Owners at any convenient time after redelivery, Owners
shall accept redelivery of the vessel provided that Charterers
undertake to reimburse the costs of repairing on the basis of
actual repair bills of mutual agreement and time used for
repairs not to count as hire.
Damages affecting vessel's seaworthiness/class/cargoworthiness
to be repaired immediately at the port of occurrence at
Charterers' time/risk and expense to vessel's class
satisfaction and vessel to remain on full hire during that
time.

CLAUSE 38 :
-----------
Vessel to be delivered with valid deratisation certificate or
deratisation exemption certificate on board and if this does
not cover the whole period of time-charter Owners to undertake
to carry out all necessary steps to renew such certificate and
costs of same and detention to be for Owners' account.

$T_{c}y$

./..



Case 1:08-cv-09002-WHP   Document 6   Filed 01/16/09   Page 22 of 60

 **intermar n.v.**

CLAUSE 39 :
-----------
Owners and Master to undertake best efforts to co-operate with
Charterers for best stowage of cargo. Owners and Master also
undertake to co-operate with Charterers in taking necessary
steps for cargo fumigation, if necessary, subject to receiving
clear and proper instructions from Charterers to this respect
at Charterers' time and expenses and responsibility.

CLAUSE 40 :
------------
Vessel to passes the necessary certificate to comply with
safety and health regulations and current requirements at all
ports of call.

CLAUSE 41 : CARGO EXCLUSIONS
------------
No livestock, acids, ammonium nitrate, ammonium chlorine,
asbestos, ashes borax, asphalt, pitch in bulk, explosives,
arms, nuclear fuel, all type of scrap, ammunitions, nuclear or
radioactive products or waste, calcium carbide, calcium
chloride, caustic soda, caustic potash, concentrates,
ferrosilicon, petroleum or its products, petcoke, potassium
chloride, motor spirit, naphtha, expellers, salt, sulphate,
sulphur, sodium nitrate, bitumens, creosoted goods, motor
blocks, tar or any of their products, black-powder, blasting
caps, detonator caps, loaded bombs, TNT, dynamite, logs,
charcoal, iron briquettes, sponge iron, cement in bulk,
bauxite, fish meal, wet hides, bones, hooves, explosive
detonators, copra or its products, turnings, toxic cargoes,
devco coal, steam coal, pond coal, war material, direct
reduced iron pellets(dri) and its products or any other
explosive, combustible, injurious, corrosive, inflammable or
dangerous goods and other cargoes affecting immediately or
long terms the safety of the vessel to be carried.

T.y

./..



Case 1:08-cv-09002-WHP   Document 6   Filed 01/16/09   Page 23 of 60

 intermar n.v.

CLAUSE 42 :
------------
Charterers to have the option to arrange a superficial
inspection at any time, Owners or Master giving every facility
to carry it out.

CLAUSE 43 : DELETED
------------

CLAUSE 44 : BALTIC CONFERENCE WAR RISKS CLAUSE FOR TIME
------------ CHARTERERS 1939.
(A) The vessel, unless the consent of the Owners be first
obtained, not to be ordered nor continue to any place or on
any voyage nor be used on any service which will bring her
within a zone which is dangerous as the result of any actual
or threatened act of war, war, hostilities, warlike
operations, acts of piracy or of hostility or malicious damage
against this or any other vessel or its cargo by any person,
body or State whatsoever, revolution, civil war, civil
commotion or the operation of international law, nor be
exposed in any way to any risks or penalties whatsoever
consequent upon the imposition of Sanctions, nor carry any
goods that may in any way expose her to any risks of seizure,
capture, penalties or any other interference of any kind
whatsoever by the belligerent or fighting powers or parties
or by any Government or Ruler.

(B) Should the vessel approach or be brought or ordered within
such zone, or be exposed in any way to the said risks, (1) the
Owners to be entitled from time to time to insure their
interest in the vessel and/or hire against any of the risks
likely to be involved thereby on such terms as they shall
think fit, the Charterers to make a refund to the Owners of
the premium on demand: and (2) hire to be paid for all time
lost, including any loss owing to loss of or injury to the
Master, Officers or crew or to the action of the Crew in
refusing to proceed to such gone or to be exposed to such
risks.

./..


**intermar n.v.**

CLAUSE 44 : CONTINUATION
-----------

(C) In the event of wages of the Master, Officers and/or crew
or the cost of provisions and/or stores for deck and/or engine
room and/or insurance premiums being increased by reason of or
during the existence of any of the matters mentioned in
section (A) the amount of any increase to be added to the hire
and paid by the Charterers on production of the Owners'
account therefore, such account being rendered monthly.

(D) The vessel to have liberty to comply with any orders or
directions as to departure, arrival, routes, ports of call,
stoppages, destination, delivery or in any other wise
whatsoever given by the Government of the nation under whose
flag the vessel sails or any other Government or any person
(or body) acting or purporting to act with the authority of
such Government or by any committee or person having under the
terms of the war risks insurance on the vessel the right to
give any such orders or directions.

(E) In the event of the nation under whose flag the vessel
sails becoming involved in war, hostilities, warlike
operations, revolution or civil commotion, both the Owners and
the Charterers may cancel the Charter and, unless otherwise
agreed, the vessel to be redelivered to the Owners at the port
of destination or, if prevented through the provisions of
section (A) from reaching or entering it, then at a near open
and safe port at the Owners' option, after discharge of any
cargo on board.

(F) If in compliance with the provisions of this clause
anything is done or is not done, such not to be deemed a
deviation.

(G) The Baltic and International Maritime Conference and the
Chamber of Shipping of the United Kingdom War Risk Clauses for
voyage Charters 1950 (Code name "Voywar 1950") shall be
incorporated in all sub-charters and Bill(s) of Lading entered
into or issued in respect of the vessel during the currency of
the Charter.

./..

 intermar n.v.

MV "PIONEER SPIRIT" - C/P DD 23/04/2004 - PAGE 12 OF 31

CLAUSE 45 :
-----------
The vessel's hold condition upon delivery or on arrival 1st
loading port to be dry, clean, free from loose rust and ready
in all aspect to receive Charterers' intended cargo. In case
vessel holds are not ready as specified by Governmental or
local independent Surveyors, the vessel will be placed off-
hire from time of such failure until passing holds re-
inspection and any/all directly related expenses and time
incurred thereby to be for Owners' account.

Charterers to have the option to redeliver the vessel without
cleaning holds including removal/disposal of all dunnage/
lashing material/debris if any, against Charterers paying US-$
2.500,- in lumpsum to Owners.

Intermediate hold cleaning : The Charterers shall provide and
pay directly to Owners extra for sweeping and/or washing
and/or cleaning of holds between voyages and/or between
cargoes provided such work can be undertaken by the crew and
is permitted by local regulations at the rate of US-$ 1.750,-
lumpsum.
In connection with any such work operation, the
Owners/vessel/crew shall not be responsible if the vessel's
holds are not accepted or passed by the port or any other
authority/surveyors.

Cable/entertainment/victualling etc., US-$ 1.000,- per month
or pro-rata.
Cable/entertainment/victualling expenses to be settled with
Owners.

CLAUSE 46 :
-----------
Owners to advise Charterers full name of Master when fixture
is confirmed and Owners to give advance notice to Charterers
with full name of new Master when Owners decide to change
Master.

./..

Case 1:08-cv-09002-WHP   Document 6   Filed 01/16/09   Page 26 of 60

 **intermar n.v.**

CLAUSE 47 :
-------------
Charterers to undertake to keep Owners and Master informed
during the period as of regards the itinerary of the vessel
and the name of their Agents at ports of call.

CLAUSE 48 :
-----------
Charterers' agent to attend vessel's minor usual services free
of charge but all expenses incurred to be for Owners' account.

CLAUSE 49 :
-----------
Owners/Master to authorize Charterers or their agents to
sign/release original Bill(s) of Lading if require by
Charterers always in accordance with Mates receipt.//

CLAUSE 50 :
-----------
Owners/Master to give notice to Daewoo Logistics., Co., Ltd.
Seoul (K36018) expected time of delivery and expected
quantities of IFO and MDO remaining on board at time of
delivery, upon fixing and updated expected delivery date as
applicable prior to date of delivery.

CLAUSE 51 :
-----------
Owners' P & I Club is U. K.
Charterers have the benefit of Owners' P and I Club so far as
the rules permit.

CLAUSE 52 :
-----------
Throughout the period of this Charter vessel will have on
board current valid and up-to-date certificate and will so
comply with all applicable requirements, regulations and
recommendations.                                            ./..

 intermar n.v.

## MV "PIONEER SPIRIT" - C/P DD 23/04/2004 - PAGE 14 OF 31

CLAUSE 52 : CONTINUATION
-------------
Any delay caused by non-compliance with the aforesaid or lack
of proper documentation and/or certificates required will be
considered off-hire and all expenses resulting from such
delay, including bunkers consumed during the period, will be
for Owners' account.

CLAUSE 53 :
-------------
If the vessel is off-hire for a consecutive period of 20 days,
Charterers have the right to cancel this Charter Party without
any further obligation under this contract on the party of
Charterers, provided no cargo remaining on board.

CLAUSE 54 :
-----------
Any taxes/dues/expenses due to vessel's registry Ownership/
crew/flag/absence of certificate to be for Owners' account.
Any and all other taxes, due commissions and or wharfages to
be for Charterers' account.

CLAUSE 55 :
-------------
In the event of breakdown of crane(s) by reason of disablement
of insufficient power, the hire to be reduced pro-rata for the
period of such an insufficiency in proportion to the number of
working hatches at the time of breakdown of equipment.

If Charterers elect to continue work on hatch or hatches
affected by breakdown by hiring shore appliances, Owners are
to pay for shore appliances but in such case Charterers are to
pay full hire for all time shore appliances are working.
Any stevedoring and/or labor charges additionally occurring
due to breakdown of vessel's equipment, unless the clause of
breakdown of cranes in attributed to stevedoring damage in
which case vessel will remain on full hire, including costs

./..

Case 1:08-cv-09002-WHP Document 6 Filed 01/16/09 Page 28 of 60

 **intermar n.v.**

CLAUSE 55 : CONTINUATION
-----------

for standby of stevedore, labor to be for Owners' account.
Prior Charterers hiring shore appliances, to give 12 hours to
Owners to repair vessel's crane(s).

Owners to agree for the cost of hiring of shore appliances
which not to be unreasonably withheld.

CLAUSE 56 :
-----------

From the date of coming into force of the International Safety
Management (ISM) Code in relation to the vessel and thereafter
during the currency of this Charter Party, the Owners shall
procure that the vessel and "the company" (as defined by the
ISM Code) shall comply with the requirements of the ISM Code.
Upon request the Owners shall provide a copy of relevant
document of compliance (DOC) and Safety Management Certificate
(SMC) to the Charterers. Except as otherwise provided in this
Charter Party, loss, damage, expense or delay caused by
failure on the part of "the company" to comply with the ISM
Code shall be for Owners' account.

CLAUSE 57 :
-----------

Charterers have option to weld padeyes on deck/hold at
Charterers time/expenses but always to in accordance with the
vessel/cargo securing manual and same to be removed prior to
redelivery, but Charterers have option to redeliver vessel
without removing padeyes paying USD .00 per padeye.

CLAUSE 58 :
-----------

Charterers have option to load intended cargo on deck/hatch
cover at Charterers' time/risk/expenses in accordance with
vessel's deck/hatch cover strength and vessel's deck/hatch
cover strength and vessel's stability at Master's discretion
which, however, not to be unreasonably withheld. Any risks,
claims, costs and consequences arising from loading cargo on
deck/hatch covers to be for Charterers' account.

./..

 **intermar n.v.**

## MV "PIONEER SPIRIT" - C/P DD 23/04/2004 - PAGE 16 OF 31

CLAUSE 58 : CONTINUATION

Bill(s) of Lading issued covering such cargo shall be claused as follows: Shipped on deck at Charterers' Shipper's and Receivers' risk, expenses and responsibility, without liability on the part of the vessel or her Owners for any loss or damage, expense or delay howsoever caused.

CLAUSE 59 :

Cargo claims between the Owners and Charterers shall be settled in accordance with the Interclub New York Produce Exchange Agreement in February 1970, as amended 1996. NO party is authorized to proceed with the settlement of any cargo claims or grant time extensions unless the other party's written approval has been obtained. Neither party shall between themselves refer to the one year time limit as a defense.

CLAUSE 60 : DELETED.

CLAUSE 61 :

Any delay, expenses and/or fines incurred on account of smuggling if caused by Master, Officers and/or crew to be for Owners' account and if caused by Charterers' servants or representatives to be for Charterers' account.

CLAUSE 62 : DELETED.

CLAUSE 63 :

Charterers and supercargoes to have the right of using the vessel's means of communication. (See Clause 10)

./..

 intermar n.v.

CLAUSE 64 :
---------
No cranemen/winchmen from crew.

CLAUSE 65 :
-----------
Owners to supply fresh water at their account during this
Charter except the same used for Charterers' business, which
to be for Charterers' account.

CLAUSE 66 :
-----------
Vessel uses Diesel Oil in main engine when entering/leaving
port and when maneuvering in narrow/ shallow/ restricted
water.

CLAUSE 67 :
-----------
Owners guarantee that vessel's hatchcover are to be watertight
all throughout this Charter period and if any hatchcovers
found defective, same to be rectified at Owners' time and
expenses to Charterers satisfaction. Charterers also have the
right to carry out hose test on all hatches at any time during
this Charter period.

CLAUSE 68 :
-----------
Cargo gear to be in fully efficient state throughout the
currency of the Charter Party.

CLAUSE 69 :
-----------
Owners warrant that the vessel's holds are clear of any
superstructures such as car deck/curtain plates whatsoever.

./..

 intermar n.v.

## MV "PIONEER SPIRIT" - C/P DD 23/04/2004 - PAGE 18 OF 31

CLAUSE 70 :
-----------
Should the vessel be arrested during the currency of this
Charter at the suit of any person having or purporting to have
a claim against or any interest in the vessel, the hire is to
be suspended for any period that the vessel remains under
arrest, unless still available for use by Charterers, or
remains unemployed as the result of such arrest and Owners
shall reimburse to Charterers any proven expenditure and
consecutive loss incurred due to the arrest.

CLAUSE 71 :
-----------
Owners to allow Charterers to discharge entire cargo without
presentation of original Bill(s) of Lading by providing
Charterers Letter of Indemnity in accordance with Owners P and
I Club form and wording before discharging Letter of Indemnity
to be signed by Charterers only.

CLAUSE 72 :
-----------
Normal quarantine time and expenses for vessel entering
port(s) to be for Charterers' account, but any time of
detention and expenses for quarantine due to pestilence,
illness etc., of Master/Officers/crew to be for Owners'
account unless it is because of the cargo carried or the ports
visited whilst under present charter in which case to be for
Charterers' account.

CLAUSE 73 :
-----------
Watchmen charges, if any, shall be borne, by party
arranged/orders the same unless it is compulsory in which case
to be for Charterers' account.

./..

Case 1:08-cv-09002-WHP   Document 6   Filed 01/16/09   Page 32 of 60

 **intermar n.v.**

CLAUSE 74 :
------------
Vessel's cargo gear and all other equipment shall comply with
the regulations of the country in which vessel, will be
employed and Owners to ensure that the vessel is at all times
in possession of valid and up-to-date certificates of
efficiency to employ with such regulations. Gear certificates
to be shown to Charterers or their Agents if required.

If stevedore, longshoremen or other workmen are not permitted
to work due to failure of Master and/or Owners and/or Owners'
Agents to comply with the aforementioned regulation or because
vessel is not in possession of such valid and up-to-date
certificates of efficiency, then Charterers may suspended hire
for the time thereby lost.

CLAUSE 75 :
------------
Owners guarantee that vessel is not blacklisted by any Arab
league countries nor US/Canadian Longshoremen's Union.

CLAUSE 76 :
------------
All negotiation and eventual fixture to be kept private and
confidential.

CLAUSE 77 : DELETED.
------------

CLAUSE 78 : DELETED.
------------

$T.y$

./..

Case 1:08-cv-09002-WHP   Document 6   Filed 01/16/09   Page 33 of 60

 intermar n.v.

CLAUSE 79 : TRADING EXCLUSIONS
------------
T.O.C., Turkey, Israel, Lebanon, Syria, Tunisia, Algeria,
Georgia including Abkhazia all territories within the
Republic of Yugoslavia at January 1st 1992, Sea of Azov, Eire,
full Scandinavia including Denmark and Finland, Iceland, U.K.,
North and South Yemen, Iraq, Kuwait, North Korea, New Zealand,
Australia, Sierra Leone, Tasmania, Mauritania, Liberia,
Nigeria, Namibia, Somalia, Ethiopia, Cuba, Haiti, USA and all
of its territories, Canada, Great Lakes, all war or war like
zones, all ice bound ports.

CLAUSE 80 :
------------
Greenwich Mean Time to be applicable for charter hire
calculation.

CLAUSE 81 :
------------
Additional premium on cargo insurance due to vessel's age and
flag to be for Charterers' account.

CLAUSE 82 : DELETED.
------------

CLAUSE 83 : DELETED.
------------

CLAUSE 84 : DELETED.
------------

CLAUSE 85 :
------------
Charterers to use lashing materials free of expenses as on
board which if not available then same will be supplied by the
Charterers.

./..

Case 1:08-cv-09002-WHP   Document 6   Filed 01/16/09   Page 34 of 60

 **intermar n.v.**

CLAUSE 86 : DELETED.
-----------

CLAUSE 87 : DELETED.
-----------

CLAUSE 88 : DELETED.
-----------

CLAUSE 89 :
-----------
Owners/Master to give Charterers  /7/5/3/2/1 day prior notice
of vessel's expected delivery.

CLAUSE 90 :
-----------
New Both to Blame Collision Clause, New Jason Clause, U.S.A.
Clause Paramount. Chamber of Shipping Nuclear Clause and
Chamber of Shipping Clause Paramount as per attached shall be
incorporated in this Charter Party, New Both to Blame
Collision clause, New Jason Clause, Clause Paramount shall be
included in all Bill(s) of Lading issued under this Charter
Party.

CLAUSE 91 : DELETED.
-----------

CLAUSE 92 :
-----------
Owners to have liberty to bunker for Owners account in
Charterers time provided this does not interfere with
Charterers business and to notify Charterers of their
intention at least 72 hours prior to such bunkering taking
place or as mutually agreed.

./..

Case 1:08-cv-09002-WHP   Document 6   Filed 01/16/09   Page 35 of 60

 **intermar n.v.**

CLAUSE 93 : DELETED.
------------

CLAUSE 94 :
-----------
Good weather condition mentioned in lines 9/10 of the preamble
applies to Beaufort scale 3 and below and in smooth water. The
about before the speed gives the vessel and allowance for half
a knot.

CLAUSE 95 :
------------
Charterers/Receivers have option to place mobile cranes on
deck at discharging port but depending on vessel's deck
strength. If deck strength is not strong enough Receivers to
put enough dunnage to Master's satisfaction with wooden
battens for spreading the weight of mobile cranes, grabs and
cargo to deck area.
Any damage caused to vessel by mobile cranes and any
modification requested in this respect will be effected and
repaired/restored by Charterers in their time and at their
expenses to the satisfaction of the vessel's class surveyor
and the Master.

CLAUSE 96 :
------------
Owners to warrant vessel is a single deck general cargo and
can load a full and complete cargo in cash hold according to
the latest SOLAS Regulations.

CLAUSE 97 :
------------
Owners warrant that the vessel has not traded with Cuba during
the last 24 months and has never called North Korea.

./..

Case 1:08-cv-09002-WHP   Document 6   Filed 01/16/09   Page 36 of 60

 **intermar n.v.**

CLAUSE 98 :
-----------
Charterers may supply an independent weather routing company's advises to Master during the voyages specified by Charterers. Master shall comply with the routing procedure of the routing services selected by Charterers but always subject to Master's description for the safety of the vessel and the actual weather prevailing evidence of weather condition shall be from the vessel's log books, which shall be taken as ruling.

CLAUSE 99 : DELETED.
-----------

CLAUSE 100 :
-----------
Owners guarantee vessel is suitable for grab discharging as far as a vessel of her size/type can be and bulldozer operation in holds provided the weight of grabs/bulldozers is compatible to vessel's tank top strength.

CLAUSE 101 : DELETED.
-----------

CLAUSE 102 :
-----------
Vessel has not relation to Ex-Yugoslavia in vessel's flag/ownership/crew etc.

CLAUSE 103 : DELETED.
-----------

CLAUSE 104 :
-----------
Owners confirm that Master can speak English well not affecting Charterers smooth operation and if there some communication problem happened due to Master non ability in speaking English Owners should change Master immediately upon Charterers request.

./..

Case 1:08-cv-09002-WHP   Document 6   Filed 01/16/09   Page 37 of 60

 **intermar n.v.**

CLAUSE 105 :
-------------
No dry dock during whole this Charter Party except emergency
and/or required by vessel's class and Owners confirm the ship
will not be sold during current Charter Party period.
Charterers have the option of adding any time the vessel is
off-hire to the Charter Period.

CLAUSE 106 :
-------------
In the event that steel cargo be loaded under this Charter
Party, the Owners have the option to appoint a surveyor
through their P and I Club to carry out a pre-loading
condition survey on the cargo and expenses shall be for Owners
account.  Charterers are to give Owners not less then 72 hours
notice, Saturdays and Sundays excluded, of the intention to
load steel cargo.

CLAUSE 107 :
-------------
Owners guarantee that valid ITF agreement for the vessel
covering any port or place is available on board for the whole
period of this Charter Party.

CLAUSE 108 : DELETED.
-------------

CLAUSE 109 :
-------------
Basic annual War risk insure premium for world wide trading to
be for Owners' account.  Additional War risk insurance
premiums imposed by the Owners underwriters due to the trading
of the vessel to or through areas for which extra and/or
additional premium applies same to be for Charterers' account
but not to exceeding LLOYDS of London underwriters.  Same will
be paid by Owners and reimbursed to Owners by Charterers
against presentation of vouchers.

T.y

./..

Case 1:08-cv-09002-WHP   Document 6   Filed 01/16/09   Page 38 of 60

 intermar n.v.

CLAUSE 110 : HAMBURG RULES PROTECTION CLAUSE
-------------

Neither the Charterers nor their agents shall permit the issue
of any Bills of Lading or other documents evidencing a
contract of carriage (whether or not signed on behalf of the
Owners or on the Charterers' behalf or on behalf of any sub-
Charterers) in corporating, where not compulsory applicable,
the Hamburg Rules or any other legislation giving effect to
the Hamburg Rules or any other legislation imposing liability,
loss or damage which may result from any breach of the
foregoing provisions of this Clause.

CLAUSE 111 :
-------------

The term and condition of this Charter Party are subject to
the Hague Rules contained in the International Convention for
the verification of certain rules relative to Bill(s) of
Lading dated Brussels 25-8-1924 and any subsequent amendments
thereto.
General Paramount clause to be incorporated in all Bill(s) of
Lading issued under this Charter Party.

CLAUSE 112 :
-------------

Owners to ensure that vessels officers/crew have all valid
Vaccination certificates covering yellow fever etc.
If vessel is not granted free pratique upon arrival at or/off
port due to invalid vaccination certificates or certificates
showing handwritten remarks and/or erasures, fine and/or time
lost including possible quarantine resulting there from to be
solely for Owners' account.
This clause to prevail over clause 72.

CLAUSE 113 :
-------------

Owners to ensure that the sewage system is properly working at
all times. In case of malfunctioning of sewage system
discovered by port/health authorities, any fine or other
direct consequences to be for Owners' account.

./..

 intermar n.v.

MV "PIONEER SPIRIT" - C/P DD 23/04/2004 - PAGE 26 OF 31

CLAUSE 114 :
-------------
Vessel only to load cargo for which "clean on board" Mate's
Receipt and then Bills of Lading can be issued and signed by
Master/Agents.   All cargo shipped to be in good conditions,
if some bags proven to be damaged or torn before loading
operations, same to be replaced by sound bags.

CLAUSE 115 : CHANGE OF BILLS OF LADING
-------------
In case the destination and/or the distribution of quantities
shown in the initial set of Bills of Lading would be different
to the actual destination and/or distribution of quantities,
Charterers or their Agents to have the right to specify in the
face of Bills of Lading the precise destination once declared.
Intermar may issue and/or split and sign on Master's behalf
new set(s) of Bills of Lading, under the following formal
conditions:

1. A) Such new set of Bills of Lading shall be faxed to Owners
      for their approval prior same signed on Master's behalf.
   B) Total quantity and description of cargo to be fully in
      accordance with the Bills of Lading.
   C) The initial complete set of original Bills of Lading to
      be surrendered, cancelled and returned to the Owners.
   D) Charterers hereby undertake and guarantee to hold Owners
      and/or Master harmless from any liability arising there
      from and to indemnify Owners for all costs and
      consequences as a result of Charterers acting within the
      above mentioned authority.

If Charterers so issue a new set of Bill of Lading, Charterers
to sign Owners standard Letter of Indemnity as per Owners'
P & I Club wording.  Charterers will try to collect originals
until 6 months after completion of loading.

2. Owners agree to discharge the cargo at Charterers' request
without presentation of original Bills of Lading, against a
Letter of Indemnity, as per Owners P & I Club wording, and
signed only by Charterers.

./..

Case 1:08-cv-09002-WHP   Document 6   Filed 01/16/09   Page 41 of 60


**intermar n.v.**

## U.S.A. CLAUSE PARAMOUNT

This Bill of Lading shall have effect subject to the
provisions of the Carriage of Goods by Sea Act of the United
States, approved 16 April, 1936, which shall be deemed to be
incorporated herein, and nothing herein contained shall be
deemed a surrender by the carrier of any of its rights or
immunities or an increase of any of its responsibilities or
liabilities under said Act. If any term of this Bill of
Lading be repugnant to said Act to any extent, such term shall
be void to that extent, but not further.

## CHAMBER OF SHIPPING NUCLEAR CLAUSE

Notwithstanding any other provision contained in this Charter
it is agreed that nuclear fuel or radioactive products or
waste are specifically excluded from the cargo permitted to be
loaded or carried under this Charter Party.

This exclusion does not apply to radio-isotopes used or
intended to be used for any industrial, commercial,
agricultural, medical or scientific purpose, provided Owners'
prior approval has been obtained to the loading thereof.

T.y

Case 1:08-cv-09002-WHP   Document 6   Filed 01/16/09   Page 42 of 60

 **intermar n.v.**

## CHAMBER OF SHIPPING CLAUSE PARAMOUNT

Notwithstanding anything herein contained no absolute warranty of seaworthiness is given or shall be implied in this Charter-Party and it is expressly agreed that the Owners shall have the benefit of the "Rights and immunities" in favour of the carrier or ship and shall assume the "Responsibilities and Liabilities" contained in the enactment in the country of shipment giving effect to the rules set out in the international Convention for the unification of certain rules relating to Bills of Lading : dated Brussels the 25th August, 1924 (the "Hague Rules"). If no such enactment is in force in the country of shipment the Terms of Articles III & IV shall apply.

Notwithstanding the provisions of any such claim shall be limited to Stg. 200 Lawful money of the United Kingdom per package or unit of cargo (unless the nature and value of such cargo have been declared by the Shipper before loading and inserted in the Bills of Lading) notwithstanding that some other monetary limit is laid down by the legislation to which the contract of carriage is subject.

If any provision of this Charter Party shall be repugnant to the said rules to any extent, such provisions shall be void to that extent, but no further. Any Bill of Lading issued pursuant to this Charter Party shall contain a Clause Paramount incorporating the Hague Rules whether they are compulsorily applicable or not.

Case 1:08-cv-09002-WHP   Document 6   Filed 01/16/09   Page 43 of 60

 intermar n.v.

## MV "PIONEER SPIRIT" - C/P DD 23/04/2004 - PAGE 30 OF 31

### NEW JASON CLAUSE

In the event of accident, danger, damage or disaster before or
after the commencement of the voyage, resulting from any cause
whatsoever whether due to negligence or not, for which or for
the consequence of which, the carrier is not responsible by
statute, contract or otherwise, the goods, shippers,
consignees or Owners of the goods shall
contribute with the carrier in general average to the payment
of any sacrifices, losses or expenses of a general average
nature that may be made or incurred and shall pay salvage and
special charges incurred in respect of the goods.

If a salving ship is owned or operated by the carrier, salvage
shall be paid for as fully as if the such salving ship or
ships belonged to strangers. Such deposit as the carrier or
his agents may deem sufficient to cover the estimated
contribution of the goods and any salvage and special charges
thereon shall, if required, be made by the goods, shippers
consignees or Owners of the goods to the carrier before
delivery.

T, y


**intermar n.v.**

## MV "PIONEER SPIRIT" - C/P DD 23/04/2004 - PAGE 31 OF 31

### NEW BOTH TO BLAME COLLISION CLAUSE

If the liability for any collision in which the vessel is
involved while performing this Charter Party falls to be
determined in accordance with the laws of the United States of
America, the following clause shall apply :

"If the ship comes into collision with another ship as a
result of the negligence of the other ship and any act,
neglect or default of the Master, Mariner, Pilot or the
servants of the carrier in the navigation or in the management
of the ship, the Owners of the goods carried hereunder will
indemnify the carrier against all loss or liability to the
other or non carrying ship or her Owners in so far as such
loss or liability represents loss of or damage to, or any
claim whatsoever of the Owners of the said goods, paid or
payable by the other or noncorroding ship or her Owners to the
Owners of the said goods and set off, recouped or recovered by
the other or non-carrying ship or her Owners as part of their
claim against the carrying ship or carrier."

"The foregoing provisions shall also apply where the Owners,
Operators or those in charge of any ship or ships or objects
other than, or in addition to, the colliding ships or objects
are at fault in respect of a collision or contact".

T.y

# EXHIBIT 2
*Settlement and Costs with Pioneer Spirit*

## Kevin J. Lennon

From: Philip A. Bush [mail@pabushlaw.com]
Sent: Thursday, July 31, 2008 8:37 AM
To: Gagan Ranu
Cc: Mark Davis

Subject: RE: M/V Pioneer Spirit- WITHOUT PREJUDICE SAVE AS TO COSTS - Club ref. NEM/2004/001724

Thanks yours. Our clients will accept payment of US\$ 25,000 in full and final settlement, subject to the following:-

1.   Your clients will pay all the Tribunal's costs and will confirm the same to the Tribunal;
2.   Payment of the US\$ 25,000 is to be made within five banking days of today to the following account:-

CITIBANK N.A., LONDON
Swiftcode:       CITIGB2L
Sort Code:       18-50-08
Beneficiary:     United Kingdom P&I Association
Acc. no.:        1014714
IBAN:            GB39 CITI 1850 0801 014714

Kind regards
Philip Bush

From: Gagan Ranu [mailto:gagan.ranu@davislaw.co.uk]
Sent: Wednesday, July 30, 2008 9:23 PM
To: Philip A. Bush
Cc: Mark Davis
Subject: M/V Pioneer Spirit- WITHOUT PREJUDICE SAVE AS TO COSTS

Dear Philip,

I refer to our recent without prejudice correspondence in respect of this matter.

We do not propose to rehearse the arguments in depth as they are clearly set out in our respective clients' submissions.

Your clients did not obtain our clients' written (or other) approval to the terms of the proposed settlement between your clients and the cargo interests, even though they were required to do so as an express pre-condition of recovery under Clause 59 of the Charter. Furthermore it is clear that your clients did not use their reasonable endeavours to obtain such approval from our clients. Notwithstanding the inadequacy of the emails referred to in your clients' Claim submissions, it is clear from the additional documents attached to your client's Reply that most of the without prejudice correspondence between your clients' then solicitors and the solicitors for the cargo interests was not provided to our clients. As such our clients were not in a position duly to consider the terms of the settlement with cargo interests, and as such it cannot be said that our clients unreasonably withheld their consent to the terms of the settlement. Moreover your clients' contention that our clients were "apprised of all developments" is plainly incorrect.

Your clients' alternative claim for an indemnity is misconceived. We recognize that an indemnity will be implied into clause 8 of NYPE in respect of risks which the owners have not, on a true construction of the charter, agreed to bear. However we fail to see any reason why such an indemnity would be implied on the facts of this case. Our clients' position in respect of this issue, as well as the impact of the additional documentation produced by your client, will be set out in greater detail in their further submissions.

In spite of the aforesaid our clients are conscious of the time and costs which they are expending on this matter. Your clients previously indicated that they would be willing to accept 50 % of the amount of the claim, i.e. US\$11,000 and €3,948.84, in full and final settlement inclusive of interest and costs. In an effort to bring this dispute to an end, and to avoid the incurrence of further costs on both sides, our client is willing to pay to your

client the sum of US$25,000 in full and final settlement. This figure comprises 50% of the amount of your clients'
claim, as well as a contribution towards your clients' costs of approximately 84% (based upon the figure cited in
your clients' Questionnaire in respect of its costs of this reference to date).

Please take your client's instructions and revert.

With kind regards,

Mark/Gagan

**Gagan Ranu**
## Davis & Co
Tel:     +44 (0)1494 787587
Fax:    +44 (0)1494 787588

gagan.ranu@davislaw.co.uk
www.davislaw.co.uk
Flint Barn Court, Church Street, Amersham, Buckinghamshire, HP7 0DB
VAT No: 807 4257 31

*Davis & Co's services are provided by solicitors of England and Wales. We are regulated by the Solicitors'*
*Regulation Authority, for more details please refer to www.guide.lawsociety.org.uk.*

*This email and/or attachments are confidential and may be legally privileged and intended solely for the*
*addressee. If you are not the intended recipient, please notify us immediately by telephone on +44 (0) 1494 787*
*587 quoting the name of the sender and the intended recipient, then please delete the email and/or attachment*
*from your system immediately. Disclosure, distribution or copying of this email other than by the addressee is*
*strictly prohibited. The firm does not warrant that the information is free from a virus or any other defect that may*
*affect the recipient's computer system and it is your responsibility to scan attachments (if any).*

No virus found in this incoming message.
Checked by AVG - http://www.avg.com
Version: 8.0.138 / Virus Database: 270.5.7/1581 - Release Date: 30/7/2008 6:56 πμ

## Kevin J. Lennon

**From:** Christopher Moss [arbitration@christophermoss.com]

**Sent:** Wednesday, September 10, 2008 11:04 AM

**To:** Gagan Ranu

**Cc:** Mark Davis

**Subject:** Re: Pioneer Spirit- C?P Dated 13.03.02

Dear Mr Ranu

On behalf of Mr Moss I am pleased to confirm that £660.00 in settlement of Mr Moss's outstanding
interlocutory charges in the above matter have now been received by his bank.

With kind regards
Beverley

2008/9/1 Christopher Moss <arbitration@christophermoss.com>
   Dear Mr Ranu

   On behalf of Mr Moss may I refer to your email of 31st August.

   Mr Moss's bank details are as follows:-

         Account No:  11142524 - C J W Moss
         Sort Code:   16-10-29T
         Swift Code:  RBOSGB2L
         IBAN:        GB 56 RBOS 161029 11142524

         The Royal Bank of Scotland plc
         London St Mary Axe Branch
         54 Lime Street
         London EC3M 7BS

   Please ensure if making payment by Telegraphic Transfer that any bank charges are borne by the remitting bank.

   With kind regards

   Beverley Heynes
   Secretary to Christopher J W Moss

   2008/8/31 Gagan Ranu <gagan.ranu@davislaw.co.uk>

       Dear Mr Moss,

       I refer to your invoice dated 6 August 2008 in respect of the above matter.

Our clients would prefer to discharge your fees by way of a direct wire transfer. As such I should be grateful if you would provide the relevant bank account details by return.

I look forward to hearing from you.

Kind regards,

**Gagan Ranu**

## Davis & Co

**Tel:**   +44 (0)1494 787587
**Fax:**   +44 (0)1494 787588

gagan.ranu@davislaw.co.uk
www.davislaw.co.uk

Flint Barn Court, Church Street, Amersham, Buckinghamshire, HP7 0DB

VAT No: 807 4257 31

*Davis & Co's services are provided by solicitors of England and Wales. We are regulated by the Solicitors' Regulation Authority, for more details please refer to www.guide.lawsociety.org.uk.*

*This email and/or attachments are confidential and may be legally privileged and intended solely for the addressee. If you are not the intended recipient, please notify us immediately by telephone on +44 (0) 1494 787 587 quoting the name of the sender and the intended recipient, then please delete the email and/or attachment from your system immediately. Disclosure, distribution or copying of this email other than by the addressee is strictly prohibited. The firm does not warrant that the information is free from a virus or any other defect that may affect the recipient's computer system and it is your responsibility to scan attachments (if any).*

# CHRISTOPHER J. W. MOSS



LMAA

4, CHARLOTTE PLACE
WILTON ROAD
LONDON SW1V 1DP

TEL: 020 -7233 7032
FAX: 020 -7233 7035
E-MAIL: arbitration@christophermoss.com

6ᵗʰ August 2008

By fax and by post

Attn: Gagan Ranu
Davis & Co
Flint Barn Court
Church Street
Amersham
Bucks HP7 0DB

Dear Sirs

## "PIONEER SPIRIT" – C/P DATED 13.3.02

On behalf of Mr Moss may I refer to the email exchanges concerning the settlement of the above matter.

Mr Moss has outstanding interlocutory charges amounting in total to £660.00. I am therefore attaching for the kind attention of your clients an invoice in respect of this amount.

On behalf of Mr Moss may I take this opportunity of thanking you for appointing Mr Moss in the first instance.

With kind regards

Beverley Heynes
Secretary to Christopher J W Moss

Enc

# CHRISTOPHER J. W. MOSS



LMAA

4, CHARLOTTE PLACE
WILTON ROAD
LONDON SW1V 1DP

TEL: 020 -7233 7032
FAX: 020 -7233 7035
E-MAIL: arbitration@christophermoss.com

6th August 2008

Daewoo Logistics Ltd
c/o Davis & Co
Flint Barn Court
Church Street
Amersham
Bucks HP7 0DB

## "PIONEER SPIRIT" – C/P DATED 13.3.02
### In Arbitration

To:  My outstanding interlocutory fees and
     disbursements prior to settlement          **£660.00**

## Kevin J. Lennon

**From:** David Aikman [allagents@btconnect.com]

**Sent:** Monday, September 15, 2008 7:00 AM

**To:** Gagan Ranu

**Cc:** Philip A. Bush; Christopher Moss

**Subject:** PIONEER SPIRIT - C/P dated 13-May-02 (352)

## David J. Aikman.

Maritime Arbitrator

C/o Allington Agencies Limited
64, Allington Drive, Tonbridge, Kent TN10 4HH. United Kingdom
Tel: 00 44 (0) 1732 366128.          Fax: 00 44 (0) 1732 354923
Mobile: 0781 842 3613

E Mail: allagents@btconnect.com  or postmaster@allagents.org.uk

ACII. Member of the Faculty of Claims. Member of the Baltic Exchange
Member of the Chartered Institute of Arbitrators. Member of the L.M.A.A

**To:**          **DAVIS & C O**
                 **Attn: Gagan Ranu/Mark Davis**

**Cc:**          **P. A. BUSH LAW OFFICES**
                 **Attn: Philip Bush**

**Cc:**          **CHRISTOPHER MOSS**

Dear Sirs,

**Mv PIONEER SPIRIT**
**C/P dated 13th March 2002**
**Pioneer Spirit Maritime Ltd v Daewoo Shipping Corporation**

My Bank confirms receipt of £664 on 10th September in settlement of my interlocutory expenses for which I
thank you and take this opportunity to express my appreciation of your kind attention.

Yours faithfully,

David Aikman

# DAVID J. AIKMAN
### Maritime Arbitrator
### 64, Allington Drive
### Tonbridge
### KENT TN10 4HH

Bill to: **Daewoo Logistics Ltd**         Date         7-Aug-08
c/o Davis & Co
Flint Barn Court.
Church Street, Amersham
Buckinghamshire, HP7 0DB

| Mv | PIONEER SPIRIT | Invoice No | 573/08 |
|---|---|---|---|
| Charterers | Daewoo Logistics Ltd | C/P dated | 13-May-02 |

| Date | Description | Rate/Hour | Amount |
|---|---|---|---|
| | *To: Arbitration Services: [352]* | | |
| 6-Aug-08 | *Interlocutory Expenses*<br>As appended | | £664.00 |
| 6-Aug | *Arbitration Services*<br>As appended | | £0.00 |
| | Please remit to:<br>**Barclays Bank plc**<br>**Tunbridge Wells**<br>**Kent TN1 2UZ**<br>**United Kingdom**<br>**Sort Code: 20-88-13**<br>**IBAN: GB92 BARC 2088 1380 6470 98**<br>**SWIFTBIC: BARCGB22**<br>**For Credit: David Aikman**<br>**Account No: 80647098** | | |
| | | *Total* | £664.00 |
| | | *VAT:* | £0.00 |
| | | *Amount due* | **£664.00** |

*Not Registered for VAT*

<송 금 영 세 서>
(Customer          Transfer)

OTT-166-603921
————————————<Message   Header>——————

Sender Bank(발신은행)
    CITI BANK
    SEOUL, KOREA

Receiver Bank(수신은행)
    CITIBANK N.A. NEW YORK

————————————<Message      Text>——————

Transaction Ref. Num (송금번호)
    OTT166603921

Value date Curr. Amt (가산일, 통화, 금액)
    20080807 USD25,000.00

Ordering Customer (송금인)
    /057137187
    DAEWOO GTL CORP 5GA 541
    NAMDAEMOONRO CHUNGGU SEOUL KR.

Account with Bank or Beneficiary Bank(수취인거래은행)
    CITIBANK N.A., LONDON
    SWIFT:CITIGB2L
    SORT: 18-50-08
    IBAN:GB39 CITI 1850 0801 014714

Beneficiary Customer (수취인)
    /1014714
    UNITED KINGDOM P AND I
    ASSOCIATION

Details of Payment(고객용메세지)
    WV P.SPRIT
    ACC 16700204438

Details of Charge(국외수수료부담자)
    APPLICANT

————————————<Message  Trailer>——————



# EXHIBIT 3
*Affidavit of Kevin J. Lennon*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

DAEWOO LOGISTICS CORP.,                          :
                                                 :
                          Plaintiff,             :
                                                 :
        - against -                              :
                                                 :
HYRAM MARITIME SAL,                              :
                                                 :
                          Defendant.             :
---------------------------------------------------------------X

## AFFIDAVIT IN SUPPORT OF PRAYER
## FOR ISSUANCE OF MARITIME ATTACHMENT

State of Connecticut  )
                      )      ss: Town of Southport
County of Fairfield   )

        Kevin J. Lennon, being duly sworn, deposes and says:

        1.      I am a member of the Bar of this Court and represent the Plaintiff herein.  I am

familiar with the facts of this case and make this Affidavit in support of Plaintiff's prayer in

support of the request for issuance of a Writ of Maritime Attachment and Garnishment,

pursuant to Rule B of the Supplemental Rules For Certain Admiralty or Maritime Claims and

Asset Forfeiture Actions of the Federal Rules of Civil Procedure ("Supplemental Rule B").

## DEFENDANT IS NOT PRESENT IN THE DISTRICT

        2.      I have attempted to locate the Defendant, HYRAM MARITIME SAL within this

District.  As part of my investigation to locate the Defendant within this District, I checked the

telephone company information directory, as well as the white and yellow pages for New York

listed on the Internet or World Wide Web, and did not find any listing for the Defendant.

Finally, I checked the New York State Department of Corporations' online database which

showed no listings or registration for the Defendants.

3.    I did locate a website located at www.laktopol.pl believed to be owned and operated by the Defendant. A review of that website does not reflect that the Defendant has any presence within this District.

4.    I submit based on the foregoing that the Defendant cannot be found within this District within the meaning of Supplemental Rule B.

5.    Upon information and belief, the Defendant has, or will have during the pendency of this action, tangible and intangible property within this District and subject to the jurisdiction of this Court, held in the hands of in the hands of garnishees within this District, which are believed to be due and owing to the Defendant.

6.    This is Plaintiff's first request for this relief made to any Court.

## PRAYER FOR RELIEF FOR ORDER ALLOWING SPECIAL PROCESS SERVER

7.    Plaintiff seeks an Order pursuant to Rule 4(c) of the Federal Rules of Civil Procedure, for an Order appointing Patrick F. Lennon, Kevin J. Lennon, Charles E. Murphy, Nancy R .Peterson, Coleen A. McEvoy, Anne C. LeVasseur or any other partner, associate, paralegal or agent of Lennon, Murphy & Lennon, LLC, or any process server employed by Gotham Process Servers, in addition to the United States Marshal, to serve the Ex Parte Order and Process of Maritime Attachment and Garnishment, together with any interrogatories, upon the garnishee(s), together with any other garnishee(s) who (based upon information developed subsequent hereto by the Plaintiff) may hold assets of, for or on account of, the Defendant.

2

8. Plaintiff seeks to serve the prayed for Process of Maritime Attachment and Garnishment with all deliberate speed so that it may be fully protected against the potential of being unable to satisfy a judgment/award ultimately obtained by Plaintiff and entered against the Defendant.

9. To the extent that this application for an Order appointing a special process server with respect to this attachment and garnishment does not involve a restraint of physical property, there is no need to require that the service be effected by the Marshal as it involves simple delivery of the Process of Maritime Attachment and Garnishment to the various garnishees to be identified in the writ.

## PRAYER FOR RELIEF TO SERVE LATER IDENTIFIED GARNISHEES

10. Plaintiff also respectfully requests that the Court grant it leave to serve any additional garnishee(s) who may, upon information and belief obtained in the course of this litigation, to be holding, or believed to be holding, property of the Defendant, within this District. Obtaining leave of Court at this time to serve any later identified garnishees will allow for prompt service of the Process of Maritime Attachment and Garnishment without the need to present to the Court amended Process seeking simply to identify other garnishee(s).

## PRAYER FOR RELIEF TO DEEM SERVICE CONTINUOUS

11. Further, in order to avoid the need to repetitively serve the garnishees/banks, Plaintiff respectfully seeks further leave of the Court, as set out in the accompanying Ex Parte Order for Process of Maritime Attachment, for any process that is served on a garnishee to be deemed effective and continuous service of process throughout any given day on which process is served and throughout the next day, provided that process is served the next day, and to authorize service of process via facsimile or e-mail following initial *in personam* service.

3

## PRAYER FOR RELIEF TO TEMPORARILY SEAL CASE

12. Upon information and belief, it is the practice of many law firms in the maritime bar to review the daily electronic docket sheet of the Southern District of New York for all maritime actions filed in the district and inform the defendant(s) named therein of any Ex Parte Orders of Attachment pending against them, thus defeating the purpose of the "Ex Parte" application.

13. Further, it is the practice of certain marine publications, specifically Tradewinds (see www.tradewinds.no), to publish the names of defendants named in Ex Parte Orders of Maritime Attachment, thus further defeating the purpose of the "Ex Parte" application.

14. Upon information and belief, Tradewinds has publicized the names of parties in Rule B proceedings, the amount of the attachments, and other details of the actions, thereby further defeating the purpose of the "Ex Parte" application.

15. The U.S. District Court for the Southern District of New York has an interest in preserving the efficacy of the Ex Parte Orders issued therein.

16. The above interest supersedes the interest in maintaining a completely public docket, especially given that the public's access will only be limited temporarily based upon a pre-determined time frame set by the Court or until assets are attached, notice of attachment has been provided to the Defendant(s) and Plaintiff notified the Court that the action should be unsealed.

17. Indeed, the public's access to Ex Parte Orders of Maritime Attachment defeats their entire purpose, by depriving Plaintiffs of the element of surprise and potential allowing Defendants to re-route their funds to avoid the attachment, thus making the attachment remedy hollow.

4

18.     For the foregoing reasons, Plaintiff requests that the Court issue an Order temporarily sealing the court file in this matter, including the Verified Complaint and all other pleadings and Orders filed and/or issued herein until further notice of this Court or notification to the clerk that property has been attached.

19.     This request is narrowly tailored to meet Plaintiff's needs. Once property is attached, the case should be unsealed, as the interest underlying sealing the case will have been largely eliminated.

Dated: October 20, 2008
        Southport, CT

Kevin J. Kennon

Sworn and subscribed to before me
this 20th day of October, 2008.

NOTARY PUBLIC

5